First case on the docket this morning is Mueth v. Mueth, 5-16-0326. Counsel for the appellant, you may proceed, and please state your name for the record. My name is Ron. I represent IRS Mueth. May I please report? I'm here on two issues that I presented on appeal. The first issue that I will address is whether the trial court should have found Jeffrey Mueth in contempt for his, for lack of a better word, of the minor child's college UTMA, Uniform Transfer to Minor Child Accounts. And it is our position that, based upon the facts, as we know, that Mr. Mueth violated the judgment of disillusion of marriage, and the court should have found him in contempt and should have required not only an accounting, but restoration of the funds and issued sanctions thereon. The facts are as follows, and I won't spend much time because I know that you'd rather me address the issues, but in 2003, when the parties were divorced, the judgment signed under the Uniform Transfer to Minors Act, the funds in two accounts that were being held for the parties' minor children, CM, Clarissa Mueth, and HM, Harmony Mueth, they are designated as initials for privacy reasons in the briefs, in the briefs. And these accounts were to be administered and held by Mr. Mueth during the pendency of the children's minority until they reach college. The language specifically said that the funds were only to be used for the children's college education, period. There were no exceptions. There were no additions. So, over the years, the judgment also required Mr. Mueth to file annual accountings of the funds so that my client, my ex-mute, would be able to keep track of what was going on. Over the years, Mr. Mueth sporadically produced accountings, but during the year leading up to this proceeding, Mr. Mueth did not produce an accounting. He produced one in 2015, but not one in 2016 at my request. In 2016, we had a hearing based upon a petition for a rule to show cause that I filed because I had, my client had gotten word that perhaps the funds in the college accounts had disappeared. So, I filed a petition for a rule to show cause that was heard by the court in Clinton County on July 26, 2016. At that time, the evidence was unequivocally, and in fact, there was an admission by Mr. Mueth that he spent the, spent the money, $12,000 of the money that had accumulated in the account to purchase a car for Clarissa, and he conceded that the car was unrelated to the college education. He further proceeded to admit that not only did he purchase a car for her, he then, because she did not follow the household rules, took the car away from her, sold the car, and gave her not one dime of the money. Now, Clarissa, at this point in time, when all this is occurring, is 19 years old, attending community college in Missouri, and is desperately in need of assistance to attend college. His reasoning, his sole reasoning for taking the funds away from the child was that she did not follow his household rules. He also admitted that he had used some of the money to pay a bill that he otherwise owed under the judgment to cover his portion of braces for one of the children, and he also admitted that the little bit of money that was left in Clarissa's account, he chose to dump into his other daughter's account. It was about $1,400, and he had no authority to do that as well. Under the Uniform Transfers to Minors Act, the custodian has certain duties. He must treat this money with the funds with care and consideration, and reasonably to protect this valuable source of funds for the child. He has a duty to do that. It is in the nature of a fiduciary duty. There is no question, and by the way, the child is a minor, according to the terms of the act, until that child attains the age of 21, which brings me to another issue that arises out of this rule to show cause. The court found that it would not find Mr. Youth in contempt for a few reasons. He reasoned, the trial judge reasoned that because Clarissa was now an adult, in other words, she had attained the age of 18, that Clarissa only had standing, that my client did not because Clarissa was over the age of 18, I suppose. Under the Uniform Transfers Act, as I said, a minor remains a minor until age 21. Moreover, my client retained standing regarding post-majority support on college because it was addressed in the judgment of dissolution between the parties. In fact, it made it clear, as I said before, that the money in the utility account was sold into the use for the college education. My client had the standing to bring this issue before the court as the primary caretaker of this child under the UTMA and also as the parent who had a right to seek post-majority support on behalf of the 19-year-old Clarissa. So I think that the trial court's decision on that was clearly an error against the evidence and contrary to the law. I think that Mr. Muth should have been held accountable. He willfully, you don't take a child's college money in a specified account, spend it on a car, sell the car, take the money, I haven't gotten to the worst part yet, take the $12,000 from the sale of the car, refuse to give it to the child, and then pay your attorney's fees with it. That is the testimony in this case. Mr. Muth admitted on the stand unequivocally that $12,000 of the child's money that would have otherwise been in the UTMA, except the purchase and sale of the car, he used the money from the sale of the car to pay his lawyer's fees in the amount of $12,000. Now, I don't understand, quite frankly, how the trial judge assumed that there was not a willfulness to Mr. Muth's actions. There can be, well, first of all, it didn't involve an inability to do something. This involved an over-action on his part when he knew that he had a duty to protect those funds, to manage those funds, and to use them for a specific purpose, colleges. He willfully took those funds. He willfully punished this child by selling the car that he had purchased, that wasn't for college, but selling the car, and then using $12,000 of those funds to pay his own lawyer fees to fight the child's mother in court, we must assume. So I'd ask that the court's ruling, the trial court's ruling on this issue, be reversed, be amended for a finding of contempt, for a thorough accounting of all funds that this child should have, and that Mr. Muth be ordered to pay my client's attorneys' fees in further bringing this action before the court. Quite frankly, I'm at a loss for words to explain how Mr. Muth thought it would be. Why he didn't try to purge himself, I guess, is what I'm trying to say. But the trial court, I believe, erred. I don't know that the standing issue was decided correctly. It's my position it certainly is not under any set of circumstances or any law that I'm familiar with. And I don't know how the child possibly has standing at this point to bring this matter before the court when she is not only considered a minor under the terms of the Act, but she is also still a part of the marital settlement agreement in its terms, which controlled how this money was to be segregated and handled. Did the trial judge consider that your client had a credibility problem? As to this issue, no. Not that I recall. I'm not sure how the trial court came to his decision on this, because I will tell you that the trial court, in his order of July 26, 2016, simply denied my second count of my petition for rule to show costs. That's all the elaboration he made in the order. And so he made some comments from the bench, some findings from the bench, that indicated that he believed the child was the one who had standing to bring the action. And it was my impression, based on that, that he was denying my petition because my client lacked standing to bring it before the court. I don't recall him denying the petition for a substantive reason, such as Mr. Mewes did not willfully do this, or Mr. Mewes had a valid excuse, or Mr. Mewes intended that it be used, the intention was that it be used for college, or anything that might mitigate a willful act in violation of the judgment. So, in a roundabout way, I hope I answered your question. Yes. Thank you. And to move on to the second issue, which is more difficult for me, simply because procedurally it's difficult to present to you. At the same time that I filed this petition for rule to show cause for Mr. Mewes' violation of the UTMA and the judgment of disillusion, which happened to be in November of 2015, things began to happen in my client's household with her daughters. Now, I think it's important that I mention that my client had always been a primary custodian of the two girls. They're highly functioning, intelligent, great kids. And by all indications, they had a nice home and a good mom who took good care of them. But right after she filed this petition to get answers about what happened to the college funds, things started going awry in the home. The younger daughter, Harmony, started showing signs of disintent. Harmony was very involved in cheerleading activities. Iris had been given leave to move the girls to Missouri, near the metro St. Louis area, several years before, in 2008. And Harmony had become very involved in the cheerleading activities at Rockville, I believe it is, high school. So, all of a sudden, she's approaching the age to drive, 16, and she's not her usual self. She's becoming disobedient, defiant, all those things that you might expect to some extent in a teenager. However, over the course of time, what my client found out was that Mr. Mute was going behind Iris' back in violation of the joint parenting agreement that has all of these requirements for parents to cooperate and protect the child by helping one another to parent the child. He was going behind my client's back, providing her with a cell phone. My client knew nothing about it. He gave her a secret bank account. My client knew nothing about it. He was encouraging her to spend more time with one of her cheerleading friends and, ultimately, to move in to the home with her cheerleading friend's mother. He bought her a car, without my client's knowledge. My client did not want her to have a car because she didn't want her on the interstate, driving dangerously as a 16-year-old, all the way to the New Baden area, where her dad lived, until she became more experienced. But he bought her a car, secretly, and then helped her, secretly, come to his home, without my client's knowledge. And it was all giving this child freedoms that, perhaps, she wasn't ready for, freedoms that she didn't deserve, and certainly didn't deserve, to be able to choose where she would live at age 16, going on 17. So, in the background, there's this dark and devious machination going on with Harmony New, to encourage her to leave her mother's home. And, lo and behold, when Iris and she start going at it, because Harmony won't listen to what her mother's telling her and defies her, the two have a two-hour blowout, for lack of a better word. And Harmony says, that's it, I'm leaving. And Iris says, okay, just leave. You know how those things go. Well, by the end of the argument, Iris is begging her to stay. The older daughter likes the whole thing, but... Well, Counsel, you'll have an opportunity for a rebuttal. I'm sorry. Okay. Thank you. May it please the Court. First dealing with the other accounts, the original judge... And your name? Oh, I'm sorry. My name is Daniel J. Gruninger, and I represent the Pele Jeffery New. Thank you. Thank you. First addressing the Uniform Transfers to Minor Act accounts. At the time of the judgment of dissolution, it was a contested case. It was not an agreed marital separation agreement. The Court held hearings, and the Court entered a judgment of dissolution accordingly. The language... Were you counsel at that time? I was counsel not for the trial, but I was the counsel who typed up the judgment of dissolution after the trial. At the time of the judgment of dissolution, paragraph J in the judgment specifically stated that the Uniform Transfers to Minor Act accounts, and I'm quoting from the very last sentence of the first paragraph, said funds shall be exclusively used initially for the benefit of each minor child's college education, the proceeds divided equally between the children, with all remaining amounts from each child's one-half share dispersed to each child upon reaching the age of 22 years. Now, the key language is in here. There are several things that are important in this clause. The first, that the proceeds are divided equally between the children. One of the children, Harmony, is still the age of 18. She just graduated from high school this past May. And the other child, Clarissa, the older child, is now 20 years old. She was 19 at the time of hearing last July. Neither one has reached the age of 22 years in accordance with the last clause of this paragraph. And the question becomes, and I addressed this in my brief at some length, as to what the intention of the trial judge was when he entered this order, and at that point in time it was Judge Rice in St. Clair County. And what his intention was, is this an award of property children, or is this an award of college education expenses, or is it a combination of the two? And the distinction is important for purposes of their petition to show cause that was filed back in 2015 and hearing was held in July of 2016. Because as the court well knows, you can't award property to minor children to be awarded to them after the time of their emancipation. Property was marital property. And the obligation to support their children ends with either emancipation or non-minor education expenses after that. One of the key paragraphs, divided equally between the children, insinuates that even though these were two separate accounts, that they were to be divided between the children. And we haven't litigated that issue, we haven't argued that issue. Why haven't we litigated that issue? Because they filed a petition for college education expenses for Clarissa, but they did not pursue it at time of trial in July of 2016. In fact, Clarissa has only attended less than one semester of college since her graduation in May of 2015. And Harmony is just now going off to college herself. So the question becomes, if these are meant to be college education expense accounts, then they're for the college education of both of the children, and that money is to be used initially for their benefit. That means that Jeffrey Muth, the father, would be obligated to pay whatever was in those UTMA accounts, whatever he did with them, to award their college education expenses first and foremost. So if it's an award of college education expenses, the mother can pursue them, but she has chosen not to. The mother can pursue them, but the child hasn't attended college. The mother can pursue them, but the second child hasn't gone to college, and we haven't even assessed what her college education expenses are yet. So it's not right for purposes of the mother with regard to it being a college education expense case, because they haven't incurred any college education expenses that haven't been paid by the father. The mother hasn't paid anything out of pocket and doesn't stand to have to pay anything because the older child isn't even in college. So do I understand then you to say that he could then use the funds for his own benefit up until the time they're 22 and then return it? Well, he used the money to buy a car initially for each child. He took one account, spent that on a car for one child, took the other account, spent that on a car for the other child, as well as paid some registration expenses. Well, let's talk about the one account for the other child. Right, where apparently he did admit that he sold it and utilized some of the money for attorney fees. Right. He took that money, and if that child goes to college, he's going to incur any expenses out of pocket up to the amount right off the top before any assessment is done with regard to college expenses after that. He's going to have to pay the first $12,000 or $13,000, whatever was in that account. So that's the first step. So he can use it as a loan receipt? I'm saying that he did in this particular case use it to buy a car, which is pretty simple. No, let's even just jump to the finale. He used it for his own benefit. Well, he used it to buy a car for the child, but then, yes, ultimately did use it for his own benefit, yes. We admit that. And if college education expenses is ever on the table for either child, he's going to have to pay the amount in both UTMA accounts up front before one penny is to be shared between the parties like it normally would under a petition for college education expenses. That's why the judge said that this case isn't ready to be on a show of cause because there's no out-of-pocket expenses associated with it yet. So then he turns to the issue of whether it's a property award by the judge. Does the judge have the authority to say that after college education expenses, I'm going to say that this money belongs to the children? Does he have that authority? And I cited several cases that show that a judge does not have such authority to award property to minor children outside of the obligation to pay for their support during their minority and then college education expenses after that. So if that's the case, then that means the award part of this saying that it's to be given to the children whatever's remaining when they reach 22, and neither one has reached 22 yet, but whatever is remaining is to be divided equally between the parties, between the children. If that's what the judge ordered, then I put and I cited that in my brief because remember, this was a contested hearing. This was not an agreed order. We didn't agree to award any marital property to the minor children, and this was intended to be a college education fund. So, excuse me, this wasn't appealed? No, there was nothing done with respect to that because it was always out in terms of as an education fund in the original judgment of dissolution, and that's the way we addressed it. In fact, in their petition to show cause, they also say in paragraph 5, I'm quoting from, with regard to the children's college education funds, even the petitioner, even Iris, admits it was an education fund. But you're telling me now that he had no legal authority to put the second half of the clause in with all remaining amounts if it's not gone for education, is to be dispersed each child. I'm saying that I think this has to be treated as an education fund, straight and forward, as simply an education fund because It's pretty clear, though, that he doesn't intend it only to be an education fund because he uses the word initially, and then he uses the word remaining amounts. And that's why I'm talking about final judgments and appeals. And I understand, and we did not appeal that issue at that time that was entered back at the time of the judgment of dissolution. It doesn't become an issue until now when they're trotting off to college, and we have an issue with regard to education expenses. But we have always treated it as an education fund for purposes of this. And so the question becomes, if it is a property right, then Judge Brandmeier is correct that the child has an independent interest in pursuing it on her own behalf outside of the parent. So the parent does not have standing. So in that regard, I submit that, yes, Judge Brandmeier ruled correct if that's the assessment that he made with regard to the nature of this account. But it's also not right even if the child could pursue it on her own behalf because she hasn't reached the age of 22, and the younger child hasn't gone to any college yet. She's just starting now. So it would be four years from now before even that is determined. And then we also have the issue of from each child's one-half share and to be divided equally between the children from the judgment, which implies that the children are to use both accounts for all education expenses, and then what might be left over after the payment of all the college education expenses to be divided between the two children. The father will pay far in excess of what was in both of these accounts toward the younger child's college education expenses. But that is an argument that we will take up when that child completes her education and we get around to actually addressing this issue about whether any amounts are to be divided. Turning to the child support for just a moment, the mother was granted leave to remove to the state of Missouri back in 2005, and she subsequently did move to Missouri. She availed herself of Missouri law. There was no finding by the trial court judge that the father had induced the older child to leave the mother's household. And in fact, when you look at the facts that were reduced at the time of trial, the mother and the daughter, the older daughter again, got into a yelling match with each other over a period of two hours in which the mother told the daughter numerous occasions, get out, pack your bags, and get out, and she did exactly that. That's what the mother asked for. That's what the daughter did. Clearly, the father didn't have any involvement in that part. There's an argument about secret bank accounts and secret cars and secret cell phones. Clearly, the cell phone was not a secret because the same day the father gave the younger daughter that cell phone, she told her mother about it and said, I don't need your cell phone anymore because Dad bought me a new cell phone. At that point in time, she was 17 1⁄2 years old. There was no secret car because, and this is the same car that was bought with proceeds from the Uniform Transfers to Minors Act accounts for the younger daughter I mentioned just a minute ago, but she had brought the car home in March of 2015 and the child didn't move out until June of 2016. So 15 months later, there was no secret about the existence of this car or where it had come from. So the mother's arguments that somehow the father was using secrets to induce the younger daughter to get in a fight with Mom really wasn't bought by the trial judge. In fact, he made a finding that the father did not do anything to induce the child to move out. But when the child moved out, the mother called the police and the mother asked that the child be returned and Missouri police would not help because the child was over the age of 17 in Missouri. Now the trial judge, in all fairness, was not going to get in the middle of interpreting what Missouri law would provide with respect to when a child is old enough to move out. Suffice it to say that the police simply refused to assist the mother to order the child to move back in with her mother over in Baldwin, Missouri where she was living. They were not going to do that. And that was enough for the trial judge to conclude that the child was old enough to be on her own and old enough to have moved out and in with Carmen Murphy so that he wasn't going to get in the middle of what Missouri law might provide about ordering the child back and entering an order that the Missouri police would not enforce. So having said that then, you turn to the issue of child support with regard to this. From the time the child moved out in June of 2016 up until the time the child graduated from high school in June of 2017, the child lived with Carmen Murphy and the father was ordered, under the court's order entered July 26, 2016, the father was ordered to set up a separate segregated bank account and reimburse Carmen Murphy for any reasonable and necessary expenses associated with the care of the child. He set that account up. He made his monthly payments in the same amount of child support as he had up until that point in time. And the interesting part is that the mother did not contribute one dime to the support of the child for that last remaining year prior to her emancipation this past June when she graduated from high school. And I find it disingenuous that the mother is arguing now at this point in time that even though she's not contributing one penny to the support of the child for that last year, that somehow the child's needs will not be met. That would be an argument for Carmen Murphy to make if she were not receiving sufficient reimbursement from the father, which she is. The structure that the judge set up for purposes of child support, the judge has a lot of discretion in ordering support. Why would he order that the support continue to be paid to the mother? And so that was the result that the judge came up with for purposes of making sure that the support went for the child's needs to the person who was paying for those needs. In other words, Carmen Murphy as opposed to the natural mother. So I submit that the judge's order is correct as far as providing for the child's needs and making sure that the child's needs are being met by the father's payments. Thank you. Counsel? Reba? Just to address the most important issues. First of all, I don't know where this business about this is a property division, the children, it wouldn't be right, blah, blah, blah. That was not mentioned by the judge. That was not in his ruling. I think it's an effort to kind of shoo away the ugliness of the fact that this father chose to spend his daughter's college funds to pay his legal fees. These children hadn't reached age 22. And had they reached age 22, the money was to be divided equally. Mr. Muth admitted he had already taken Clarissa's leftover after he wasted it on attorney's fees and dumped it into Harmony's funds because Harmony was a good girl and Clarissa challenged him. So there was no authority to do that anywhere in the judgment or under any aspect of the law. It was simply willfully doing what he wanted to do with these kids' funds. Moreover, this father completely took steps. He set up this minor's room with a third-party cheerleader mom, Carmen Murphy, and encouraged his daughter, in violation of every term in the joint parenting agreement, to leave her home with her mother and move in with Carmen Murphy. And basically seduced her into doing that with the idea that you can do whatever you want. Here's your own cell phone. Here's your own car. And that's what happened. This was a fine household. And it's so apparent when you look at the timing of the pleadings that were filed. November 15, I filed a rule to show cause because we knew those college funds. Something was going on with them. By June 5 of 16, the child was moving out of the house with her mother. And on June 13 of 16, just eight days later, Mr. Muth filed to terminate his child's support for Harmony Muth. And you know how he did it? He did it because he couldn't get custody. He tried to take custody away from my client for a long time and never could. So he came up with a scheme to have this 17-year-old move in with a third party. Then he goes down to Clinton County Court, files a petition to terminate child support, and the trial judge didn't terminate his child support but put the box in the hen house. He put the money, his own child support money, in the care of Mr. Muth. In other words, the lawyer says, Mr. Muth, you set aside what you think your daughter's going to need, and you administer it to her as you think she needs it while she's living with this third party. No custody, no custody modification was ever done, and somehow this support was supposed to be paid over to the child residing with the third party. And it was the box in the hen house taking care of money when he'd just basically stolen the entire college account from the other daughter. So, I mean, what has gone on here? Allowing a minor child to move in without a modification of custody, sanctioning, in a good way, a move in by a minor with a basically unknown third party cheerleader mom, allowing Dad to control his own child support that he gives to the child, that's not protecting the child's interests. That's not having a parent fulfill his duty to his children. That is contrary to law and should, if not be commented on, it should not be allowed to stand. That should not be a precedence. Litigants should not learn that they can circumvent the rules, the laws, by simply manipulating their children and having them, putting them in positions that avoid child support for the responsible parent. That is what happened here. I don't know how to fix it. This child is now 18. She graduated from high school in May of this year. But I will tell you this. I think Mr. Amuse should be ordered to account for those funds that he supposedly paid to Carmen Murphy and pay those funds over to the minor child at this point, any funds that she has not received, because he owed that child support. He didn't owe it to Carmen Murphy. That was for the benefit of the child. He got away with, because of the delay in the litigation and these proceedings, he got away with doing that. And now he knows whether he paid him anything to Carmen Murphy. So I would suggest that the minor child should have the benefit of that money that Mr. Amuse owed. It was never modified by the court. Anna, thank you for your attention. Thank you, counsel. The court will take the matter under advisement and issue a disposition in due course.